# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re** | |
| **MICHAEL J. WARREN and MA JENNIFER WARREN,** Debtor. | **Bankruptcy Case No. 10-40865-JDP** |

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

    David E. Gabert, Pocatello, Idaho, Attorney for Debtors.

    Charles Murphy, Boise, Idaho, Office of the Chapter 13 Trustee.

### *Introduction*

On November 9, 2010, the Court conducted a hearing to consider the Motion to Dismiss for Unreasonable Delay filed by Chapter 13 trustee Kathleen A. McCallister ("Trustee"), Docket No. 64, and confirmation of the Amended Chapter 13 plan filed by Debtors Michael J. and Ma Jennifer Warren, Docket No. 49. The Court permitted the parties to file

MEMORANDUM OF DECISION - 1

supplementary briefing, after which the issues were taken under advisement. After due consideration of the submissions of the parties, the testimony presented, the arguments of counsel, as well as the applicable law, this Memorandum represents the Court's findings of facts and conclusions of law, and disposes of both the motion and the question of confirmation of the chapter 13 plan. Fed. R. Bankr. P. 7052; 9014.[1]

## *Findings of Fact*

Ms. Warren is a nurse employed by the Portneuf Medical Center in Pocatello. Mr. Warren is currently unemployed, choosing to stay at home to care for Debtors' child with medical needs. The issues for decision focus on the fact that Ms. Warren has, historically, worked significant overtime hours at her job.

On May 19, 2010, Debtors filed a chapter 13 petition. Docket No. 1. Debtors' original Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form 22C") filed on June 2,

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION - 2

2010, listed their gross wages as $8,555.05 per month, with total deductions of $7,742.16, leaving $812.89 as monthly disposable income. Docket No. 17. Debtors' initial schedule I indicated Debtors had average monthly income of $7,026.24, and schedule J showed average monthly expenses of $5,584.70, leaving a monthly net income of $1,441.54. Docket No. 16.

Debtors filed a their original chapter 13 plan on June 2, 2010, which proposed that they make monthly payments of $1,166.62 to Trustee for sixty months. Docket No. 21. Trustee recommended that this plan not be confirmed for several reasons. Docket No. 37.

On September 25, 2010, Debtors filed an amended chapter 13 plan. Docket No. 49. This plan proposes sixty monthly payments of $1,300 be made to Trustee. The amended plan also proposes to pay $525.59 per month to a creditor "outside of the plan" on a loan secured by Debtors' 2006 Chevy Tahoe purchased near the petition date, and to also pay a total of $378.50 per month to a secured creditor so Debtors may retain a Harley Davidson motorcycle, a Honda Goldwing motorcycle, and a 1995 Chevy

MEMORANDUM OF DECISION - 3

Blazer. Docket No. 49.[2] On October 6, 2010, Trustee responded to the amended plan expressing many of the same concerns she had raised concerning the original plan, and recommended that the amended plan not be confirmed. Docket No. 61.

A confirmation hearing was set for October 26, 2010, Docket Nos. 51, 55, but was thereafter continued to November 9, 2010, Docket No. 63. Then, on October 30, 2010, Trustee filed a motion to dismiss the case, citing Debtors' unreasonable delay in achieving confirmation. Docket No. 64. Hearing on Trustee's motion was also set for November 9, 2010. Docket No. 65.

On the day before the hearing, Debtors filed an amended Form 22C in which their gross wages were now listed as $9,944.91, with total deductions of $7,997.03, leaving a monthly disposable income of $1,947.99. Docket No. 72. Also on November 8, Debtors filed amended schedules I and J, indicating an average monthly net income of $8,100.43, and average

---

[2] Debtors indicate an intention to surrender four other cars and two other motorized vehicles. Docket No. 49.

MEMORANDUM OF DECISION - 4

monthly expenses of $6,801.06, thereby resulting in monthly net income of $1,299.37. Docket No. 71. Debtors' amended schedule J lists a food expense in the amount of $1,020 per month, not including amounts needed to pay for school lunches of $80 per month. Docket Nos. 71, 73.

At the hearing, counsel for the Trustee contended that Ms. Warren's paycheck stubs did not match the income she listed on the schedule I, in that her paychecks indicated income of $8,200 per month, while schedule I showed she made $7,026 per month.[3] Ms. Warren testified that the pay stub referred to by Trustee covered a pay period during which she had worked extra shifts. She further testified that she has had to work an extra shift each week to pay the Debtors' living expenses and make the plan payments thus far.[4] She testified that sometimes, though, extra shifts are not available for her to work. To reflect this situation, Debtors submitted a

---

[3] Indeed, even the Amended schedule I does not reflect an income of $8,200 per month. It indicates that Debtors' average monthly net income is $8,100.43. Docket No. 71.

[4] It is unclear whether Ms. Warren has worked extra shifts in order to make the $1,166.62 plan payments originally proposed, or the $1,300 payments proposed in the amended plan.

MEMORANDUM OF DECISION - 5

pay stub that did not include any extra shifts showing her gross pay was $2,868.63, and take-home pay was $1,830.05.  Ex. 203.

*Conclusions of Law and Disposition*

The Court must decide whether Debtors' amended plan should be confirmed, and if it is not, whether Trustee's motion to dismiss should be granted.

1.  Confirmation of Debtors' Amended Chapter 13 Plan.

The burden is on Debtors to establish that their plan satisfies the legal requirements for confirmation.  *In re Meek*, 07.2 I.B.C.R. 23, 24 (Bankr. D. Idaho 2007); *Barnes v. Barnes (In re Barnes)*, 32 F.3d 405, 407 (9th Cir. 1994) (citing *Chinichian v. Campolongo,* 784 F.2d 1440, 1442 (9th Cir. 1986); *In re Stella*, 06.3 I.B.C.R. 67, 68 (Bankr. D. Idaho 2006).  Although Trustee raised several questions regarding the confirmability of Debtors' amended plan, the issue at the forefront concerns whether that plan satisfies § 1325(b)(1), which provides:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan

MEMORANDUM OF DECISION - 6

> unless, as of the effective date of the plan —
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b). In other words, since Trustee has objected in this case, § 1325(b)(1) requires that Debtors' plan must either pay their unsecured creditors in full, or they must pay unsecured creditors all of their "projected disposable income" to be received during the plan's duration.

In *Hamilton v. Lanning*, the United States Supreme Court resolved a circuit split concerning whether "projected disposable income" for these purposes was to be mechanically determined by looking solely at a debtor's historical earnings, or whether bankruptcy courts should engage in a "forward-looking approach." __ U.S. __, 130 S.Ct. 2464 (2010). In adopting the forward-looking approach, the Court instructed that "when a

MEMORANDUM OF DECISION - 7

bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id*. at 2478. *Lanning* acknowledged that "a court taking the forward-looking approach should begin by calculating disposable income, and in most cases, nothing more is required. It is only in *unusual cases* that a court may go further and take into account other known or virtually certain information about the debtor's future income or expenses." *Id.* at 2475 (emphasis added).

The case law in this District had taken a similar approach to determining project disposable income even before *Lanning*:

> current monthly income as defined by § 101(10A) and as evidenced by the debtor's properly completed Form 22C will control *unless* trustees, creditors or debtors challenge that historically calculated income average as unrealistically high or low given the debtor's actual factual circumstances and present evidence to support that claim and substantiate the magnitude of the variation.

*In re Meek*, 07.2 I.B.C.R. at 27 (emphasis in original).

Therefore, as explained in the cases, the calculation of a chapter 13

MEMORANDUM OF DECISION - 8

debtor's projected disposable income begins with Form 22C. *Id.* Part V. of Form 22C is entitled "Determination of Disposable Income Under § 1325(b)(2)," and line 59 of that form yields a number representing a debtor's monthly disposable income. As noted above, in Debtors initial Form 22C, their monthly disposable income was $812.89. However, in their Amended Form 22C, their monthly disposable income had increased to $1,947.99. Docket Nos. 17; 72. Under § 1325(b)(1) and the cases construing it, Debtors would therefore need to propose plan payments of $1,947.99, or an amount to which Trustee and creditors would not object, in order for their plan to be confirmable.

Debtors' amended plan proposes to pay $1,300 per month for sixty months to Trustee, and Trustee has objected to the plan. Accordingly, under § 1325(b)(1), Debtors' amended plan is not confirmable because it fails to pay all of their projected disposable income to creditors, unless the Court find that this case is "unusual," and that any future changes in Debtors' income are "known or virtually certain" at this time, i.e., the time of plan confirmation.

MEMORANDUM OF DECISION - 9

A. Changes in Debtors' Income.

Debtors have not demonstrated that their case is unusual, nor that there have been "changes" in Ms. Warren's income. To the contrary, the evidence showed only that Ms. Warren has elected to work differing numbers of extra shifts since the bankruptcy case was filed. Because the number of extra shifts she works depends upon Ms. Warren and the hospital census on any given day (i.e., whether there are any extra shifts available), the Court can not on this record conclude that availability, or the absence of extra shifts is either "known" or "virtually certain". *See Edu. Asst. Corp. v. Zellner*, 827 F.2d 1222, 1226 (8th Cir. 1987) (inclusion of future tax returns and salary increases in projected disposable income not required because they are too speculative).[5]

---

[5] Pre-BAPCPA cases are instructive here, because the Court:

> will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure. Congress did not amend the term "projected disposable income" in 2005, and pre-BAPCPA bankruptcy practice reflected a widely acknowledged and well-documented view that courts may take into account known or virtually

MEMORANDUM OF DECISION - 10

The Court notes that there is case law going both ways on whether a debtor should be expected to work overtime in order to make chapter 13 plan payments. The case of *Commercial Credit Corp. v. Killough (In re Killough)*, 900 F.2d 61 (5th Cir. 1990), is helpful, although it predates BAPCPA and Form 22C. In that case, the debtor was also a nurse who, prior to filing her bankruptcy petition, had worked significant overtime hours. However, in estimating her future monthly income, the debtor did not include any overtime income. A creditor objected to confirmation arguing that overtime compensation should be included in calculating the debtor's plan payments, because the debtor had worked overtime with regularity. A hospital representative testified that such overtime was frequently available, but the debtor testified that it was not always available to her. The bankruptcy court held that the prospect that she could work overtime in the future was not definite enough to require the

---

> certain changes to debtors' income or expenses when
> projecting disposable income.

*Lanning*, 130 S.Ct. at 2473-74 (internal citations omitted).

MEMORANDUM OF DECISION - 11

debtor to include the extra income in calculating her plan payments, and the court of appeals affirmed. *Id*. at 65.  On the other hand, there is also support for a debtor proposing a plan which would require him or her to work overtime in order to make the plan payments. *See In re Kazzaz*, 62 B.R. 308, 313 (Bankr. E.D. Va. 1986) (plan confirmed even though "[i]n order to meet the proposed $110 per month payment to the Chapter 13 trustee under the plan, [debtor] must work a given amount of overtime every month"); *In re Smith*, 43 B.R. 319 (Bankr. E.D. N.C. 1984).

Though Ms. Warren indicates her desire is to no longer take on extra shifts, or to only take a maximum of one extra shift per pay period, on this record, the Court can not find that her situation renders this case unusual so as to depart from reliance upon Form22C to calculate Debtors' projected disposable income. Indeed, based upon the proof, it doesn't appear there will be any appreciable change in Ms. Warren's future income that is in any way known or virtually certain. In other words, even using a forward-looking approach, Debtors' pay stubs show she regularly works significant overtime hours; that she will have an opportunity to do so in

MEMORANDUM OF DECISION - 12

the future; and thus, Debtors' monthly projected disposable income exceeds the amount they are proposing to pay creditors under their amended plan. Because Debtors' amended plan does not commit all their projected disposable income to payments to creditors, and because Trustee has objected to the plan, the Court may not confirm it under § 1325(b)(1). Accordingly, confirmation must be denied.[6]

### 2. Trustee's Motion to Dismiss.

Trustee argues that the Court should dismiss Debtors' bankruptcy case based upon what she characterizes as their "unreasonable delay." Trustee points out that Debtors failed to timely amend schedules I and J to reflect income that matched Ms. Warren's pay stubs. However, since Trustee's motion was filed, Debtors have filed amended schedules I and J. In addition, Trustee contends that Debtors are not acting in good faith because Debtors did not disclose all their income; because they proposed to pay for two cars and two motorcycles in their plans; and because they

---

[6] As the Court has determined that Debtors' plan does not meet the requirements of § 1325(b)(1), it will not address any of Trustee's other concerns with Debtors' Amended Plan.

MEMORANDUM OF DECISION - 13

were uncooperative in turning over a Harley Davidson motorcycle.

Dismissal or conversion of a chapter 13 case is governed by § 1307(c), which provides:

> (c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, *for cause*[.]

(Emphasis added). The statute contains a list of circumstances or types of conduct which can constitute cause for dismissal, § 1307(c)(1)-(15), but it is nonexclusive. *See* § 102(3) (the term "including" is not limiting). In this circuit, a debtor's bad faith in proposing a chapter 13 plan is considered adequate "cause" for dismissal under § 1307(c). *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999); *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1390 (9th Cir. 1982). In determining whether a chapter 13 plan has been filed in bad faith, a bankruptcy court must review the "totality of the circumstances." *In re Leavitt,* 171 F.3d at 1224; *In re* Goeb, 675 F.2d at

MEMORANDUM OF DECISION - 14

1390; *In re Weiss*, 05.4 I.B.C.R. 99, 100 (Bankr. D. Idaho 2005); *In re Noordam*, 03.2 I.B.C.R. 136, 139 (Bankr. D. Idaho 2003). In doing so, the Court considers the following factors:

> (1) whether the debtor misrepresented facts in his [petition or] plan, unfairly manipulated the Bankruptcy Code or otherwise [filed] the Chapter 13 [petition or] plan in an inequitable manner;
>
> (2) the debtor's history of filings and dismissals;
>
> (3) whether the debtor's only purpose in filing for chapter 13 protection is to defeat state court litigation; and
>
> (4) whether egregious behavior is present.

*In re Leavitt*, 171 F.3d at 1224 (internal citations omitted); *In re Weiss*, 05.4 I.B.C.R. at 100; *In re Noordam*, 03.2 I.B.C.R. at 139. Debtors bear the burden of proving that their plan was filed in good faith. *In re James*, 260 B.R. 498, 504 (Bankr. D. Idaho 2001).

Considering the factors cited above, as well as the totality of the circumstances, the Court concludes that Trustee has not demonstrated that Debtors have acted in bad faith when they filed their proposed chapter 13

MEMORANDUM OF DECISION - 15

plans. Debtors are not repeat filers, nor does there appear to be any state court litigation involved in this case. Moreover, Trustee has made no allegation that Debtors' conduct is egregious. While Debtors' attempts to retain arguably unnecessary items of property secured by significant debt is problematic, and if they persist, may prevent them from confirming a plan, the Court declines to rely upon that approach as a reason for denying them an opportunity to propose another plan.

Finally, the Court must consider whether Debtors misrepresented facts in their plan, and whether they are attempting to unfairly manipulate the Bankruptcy Code. Trustee has not alleged misrepresentation on Debtors' part. Rather, it would appear that the difficulty resides with the fact that Ms. Warren has more control over the amount of her income than do most employees, and thus the amount she earns has been something of a moving target. While she works a standard number of hours per week, she has the opportunity to work extra shifts, and does so with some regularity. The pay stub she initially filed with the Court was for a pay period during which she worked extra shifts, yet Debtors do not wish to

MEMORANDUM OF DECISION - 16

be held to that standard. However, Debtors' influence over the amount of their income does not rise to the level of misrepresentation.

The question of whether Debtors are attempting to unfairly manipulate the Code is closer to the dismissal target, but the Court declines to find unfair manipulation exists at this time. While Debtors were slow to turn over the Harley Davidson, they in fact delivered it without Trustee having to enlist the aid of the Court. On the other hand, Debtors amended plan does propose to pay for two vehicles and two other motorcycles, while not paying unsecured creditors in full. There is also some question concerning Debtors' expenses, particularly the Debtors' claim of $1,020 in food expenses each month, for a family of five.[7] At this point, there is some evidence that Debtors are not engaging in the sort of meaningful belt-tightening the Bankruptcy Code envisions for most chapter 13 debtors. It is also questionable whether Debtors will be able to propose a confirmable plan. Even so, the Court believes Debtors should be

---

[7] Debtors have a son, age 11, and a daughter, age 8, as well as one parent, age 66, living in the home. Docket No. 71. The alleged excessiveness of Debtors' expenses was not explored during the evidentiary hearing.

MEMORANDUM OF DECISION - 17

able to file another plan in light of its ruling concerning the extent of their disposable income. Hopefully, such a plan will more appropriately reflect the policies of the Code.

The Court will deny Trustee's motion to dismiss without prejudice to renew that motion after Debtors file an another amended plan.

## *Conclusion*

Debtors have not demonstrated that Ms. Warren has experienced, or is virtually certain to experience, such a change in her income as to justify departure from the disposable income reflected by the calculations in Form 22C based upon her actual prebankruptcy overtime hours. To comply with § 1325(b)(1), Debtors must propose a plan which will pay creditors all of their projected disposable income to creditors as calculated in Form 22C.

Trustee has not demonstrated that Debtors have proposed their plans in bad faith, and thus the Court denies Trustee's motion to dismiss.

A separate order will be entered.

MEMORANDUM OF DECISION - 18

Dated: December 15, 2010

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 19